**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| **ENGAGEPOINT, INC.,** | \* | |
| Plaintiff | \* | |
| v. | \* | CIVIL NO. RDB-13-3184 |
| **NORIDIAN HEALTHCARE SOLUTIONS, LLC,** | \* | |
| | \* | |
| Defendant | | |

\* \* \* \* \* \* \* \* \* \* \* \*

## ORDER

Pending before the Court is the motion of EngagePoint, Inc., for a temporary restraining order against Noridian Healthcare Solutions, LLC. (ECF No. 9.) This matter began as a suit for injunctive and declaratory relief in the Circuit Court for Anne Arundel County, Maryland, and was removed to this Court by Defendant. (ECF Nos. 1, 2.) While still pending in state court, a state circuit court judge granted a Temporary Restraining Order ("TRO") that was set to expire on October 29, 2013, at 9:00 a.m. (ECF No. 9-3.) To preserve the status quo until this Court could hold a hearing and fully consider the matter, the undersigned extended the TRO until 2:00 p.m. today, October 29, 2013.

After receiving evidence and hearing the parties' arguments through able counsel, the Court will deny the motion for TRO. In *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), the Supreme Court set forth the following standard for preliminary injunctive relief:

> A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence

of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.

*Id.* at 20.  Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22.  Courts are called upon to balance a plaintiff's claims of injury against the burdens to be imposed upon the defendant, and they must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* at 24.  The same standard applicable to preliminary injunctive relief is applicable to the question of whether a TRO should issue. *Long v. Bd. of Educ., Dist. 128*, 167 F. Supp. 2d 988, 990 (N.D. Ill. 2001); *Perdue Farms, Inc. v. NLRB*, 927 F. Supp. 897, 904 (E.D.N.C. 1996).

The merits of Plaintiff's argument hinge upon the interpretation of the contract that both parties agree governs their relationship.  This contract contains a no-hire clause that prohibits, during the term of the contract and for twelve months following its termination, either party from hiring any employee of the other party who was involved in the performance of the contract. (Pl.'s Mot. TRO, Att. 2, Contract Section 15(K), ECF No. 9-2.)  The only exception to the no-hire clause is stated in Section 15(K) itself:  "Except as provided in Section 5(H) . . . ."  In Section 5(H), EngagePoint, the Subcontractor,

> acknowledges that the services provided by Contractor under the Prime Contract, including the Services provided by Subcontractor under this Agreement, are vital to the State and must be continued without interruption in the event of expiration or termination of this Agreement.  Upon expiration or termination, and as requested by Contractor, Subcontractor shall take all reasonable steps to facilitate continuity of services.

(*Id.*, Section 5(H).)  The services that are the subject of the contract are the design, development, and implementation of a Health Insurance Exchange for the State of Maryland, in conjunction with the enactment of the federal Patient Protection and Affordable Care Act, 42 U.S.C. § 18001

2

*et seq.* The exchange was to be operational by October 1, 2013, to permit enrollment by Maryland residents in health insurance plans, and additional work is required to have it fully functioning by January 1, 2014. Both parties acknowledged some difficulties in working together, and ultimately, on October 25, 2013, Noridian terminated the contract with EngagePoint and immediately sought to hire EngagePoint employees that had been performing the work for Noridian under the contract.

The Court finds that EngagePoint is unlikely to succeed on the merits because of the Section 5(H) exception to the no-hire clause. Given the time constraints and public importance of having a fully functional health insurance exchange in Maryland, the only reasonable step to facilitate continuity of services is for Noridian to hire EngagePoint's employees. The Court accredits and finds persuasive testimony at the hearing today that it would take weeks and possibly months to sufficiently train replacement workers to adequately perform the programming and code writing duties assigned to EngagePoint employees. Mere knowledge transfer and turning over of documents are not sufficient to satisfy the promise of continuity contained within Section 5(H). Further, the Court finds that EngagePoint may well suffer irreparable harm by the loss of certain valued and valuable employees and that the balance of equities may also tip in EngagePoint's favor. However, the public interest weighs against EngagePoint. While it is certainly in the public interest to uphold the integrity of contracts, that factor does not necessarily favor EngagePoint. The interplay of Section 5(H) and Section 15(K) are such that the vital public interest in bringing the Health Insurance Exchange online was recognized by the parties as a specific exception to the no-hire clause. The Court, therefore, concludes that EngagePoint has not met its burden to establish entitlement to a TRO. Its motions (ECF Nos. 3& 9) are DENIED.

DATED this 29th day of October, 2013.

                                                BY THE COURT:

                                                /s/

                                              James K. Bredar
                                              United States District Judge