**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Baltimore Division**

| | |
|---|---|
| EngagePoint, Inc., | |
|        Plaintiff, | |
| vs. | No. 1:13-cv-03184-RDB |
| Noridian Healthcare Solutions, LLC, | |
|        Defendant. | |

## <u>ANSWER AND COUNTERCLAIM</u>

Defendant Noridian Healthcare Solutions, LLC ("NHS"), by and through its undersigned counsel, hereby answers the Complaint filed by EngagePoint, Inc. ("EngagePoint").[1] Defendant answers and responds to the specific numbered paragraphs as follows:

### <u>Responses to Numbered Paragraphs</u>

1.    Defendant admits that Plaintiff has filed an action for declaratory and injunctive relief claiming that NHS is prohibited under the Parties' Subcontract Agreement from hiring EngagePoint's employees for twelve months after the termination of the Subcontract Agreement. Defendant further responds that the Subcontract Agreement speaks for itself and denies any remaining allegations contained in Paragraph 1.

### <u>Parties</u>

2.    Defendant admits that EngagePoint is a healthcare software and IT services company that, until October 25, 2013, was the systems integrator of the Maryland Health Benefit

---

[1]    Plaintiff incorrectly identifies the Defendant as Noridian Healthcare Services, LLC. Except as otherwise noted herein, Defendant responds as though the Defendant had properly been identified as Noridian Healthcare Solutions, LLC.  Defendant reserves all rights.

Exchange.  Defendant lacks sufficient knowledge to respond to the remaining allegations in Paragraph 2, and therefore denies those allegations.

3.      Defendant responds that, on information and belief, Noridian Healthcare Services, LLC is not a valid legal entity and not the intended Defendant in this action.  Defendant admits that Noridian Healthcare Solutions, LLC is a healthcare administrator that currently does business in Maryland, is the prime contractor responsible for building the Maryland Health Benefit Exchange, and has an office in Maryland located at 1099 Winterson Road, Suite 134, Linthicum Heights, Maryland 21090.   Defendant denies any remaining allegations contained in Paragraph 3.

## Allegations of Fact

4.      Admitted.

5.      Defendant responds that the Subcontract Agreement speaks for itself and denies any remaining allegations contained in Paragraph 5.

6.      Defendant admits that on October 25, 2013, NHS notified EngagePoint in writing that NHS was terminating the Subcontract Agreement for cause.  Defendant lacks sufficient knowledge to respond to the remaining allegations in Paragraph 6, and therefore denies those allegations.

7.      Defendant responds that the Subcontract Agreement speaks for itself.  Defendant admits that on October 25, 2013, NHS solicited certain EngagePoint employees who had worked on the Maryland Health Benefit Exchange project to work for NHS, including distributing offer letters to those employees.  Defendant denies any remaining allegations contained in Paragraph 7.

8.      Defendant admits that, subsequent to, and consistent with, the Court's October 29, 2013 Order (ECF No. 20) (the "October 29 Order"), NHS has continued to solicit, seek to hire, and/or hire EngagePoint's employees who had worked on the Maryland Health Benefit Exchange project.  Defendant denies any remaining allegations contained in Paragraph 8.

9.      Defendant denies the allegations contained in Paragraph 9.

10.     Defendant responds that the allegations contained in Paragraph 10 constitute a legal conclusion for which no response is required.  To the extent a response is required: admitted.

11.     Defendant responds that the allegations contained in Paragraph 11 constitute a legal conclusion for which no response is required.  To the extent a response is required: denied.

### Claims for Relief

12.     Defendant responds that the allegations contained in Paragraph 12 constitute a legal conclusion for which no response is required.  To the extent a response is required: denied.

13.     Defendant responds that the allegations contained in Paragraph 13 constitute a legal conclusion for which no response is required.  To the extent a response is required: denied.

*        *        *

Defendant further denies all allegations, paragraphs, statements, and headings, including the statements set forth in Plaintiff's WHEREFORE clause, that have not been admitted specifically herein.

### AFFIRMATIVE DEFENSES

### First Affirmative Defense

The Complaint fails to state a claim upon which relief can be granted.

## Second Affirmative Defense

Plaintiff's claim is barred for insufficient service of process.

## Third Affirmative Defense

Plaintiff's claim is barred by its failure to perform its obligations under the Subcontract Agreement.

## Fourth Affirmative Defense

Plaintiff's claim is barred under the doctrine of unclean hands.

## Fifth Affirmative Defense

Plaintiff's claim is barred under the doctrine of excuse.

## Sixth Affirmative Defense

Plaintiff's claim is barred by its anticipatory repudiation.

## Seventh Affirmative Defense

Plaintiff's claim is barred by the Subcontract Agreement's Informal Dispute Resolution clause to the extent that the claim constitutes a matter other than that involving injunctive relief or any action necessary to enforce the award of the arbitrator.


## COUNTERCLAIM

Defendant NHS, by and through undersigned counsel, asserts the following as its Counterclaim against EngagePoint:

## Nature of the Action

1.      This is an action for injunctive relief in which NHS seeks binding injunctive relief requiring EngagePoint to honor its post-termination obligations under the Subcontract Agreement between the parties.  Until October 25, 2013, EngagePoint was a subcontractor to

4

NHS and the Systems Integrator for the Maryland Health Insurance Exchange ("HIX") project.

Due to EngagePoint's repeated failures to perform satisfactorily and cure its prior breaches of the

Subcontract Agreement, and its refusal to cooperate with NHS in completing the HIX project,

NHS terminated the Subcontract Agreement for cause.  Nevertheless, EngagePoint has an

ongoing obligation under the Subcontract Agreement to take all reasonable steps to facilitate

continuity of services that are vital to the State of Maryland and must be completed without

interruption.

### Parties

2.      Plaintiff/Counter-Defendant EngagePoint, Inc. ("EngagePoint") is a corporation

organized under the laws of the State of Florida with its principal place of business in the State of

Florida.

3.      Defendant/Counter-Plaintiff Noridian Healthcare Solutions, LLC ("NHS") is a

corporation organized under the laws of the State of Delaware with its principal place of business

in the State of North Dakota.

### Jurisdiction and Venue

4.      This action is one over which the District Courts of the United States are given

original jurisdiction pursuant to 28 U.S.C. § 1332(a).  The value of the injunction to NHS

exceeds the sum of $75,000.00, and the parties are citizens of different states.  For purposes of

28 U.S.C. § 1332, complete diversity of citizenship exists.

5.      Venue is appropriate because EngagePoint filed its complaint in the Circuit Court

of Anne Arundel County, Maryland, which Defendant removed to this Court pursuant to 28

U.S.C. §§ 1441 and 1446.

**Factual Background**

6.       NHS is the Prime Contractor under a contract (the "Prime Contract") with the

State of Maryland (the "State") to design, develop, implement, host, maintain, and operate the

Maryland HIX.

7.       On April, 13, 2012, NHS and EngagePoint entered into a Subcontract Agreement

(the "Subcontract Agreement").  *See* Ex. 1.

8.       Under the Subcontract Agreement, EngagePoint was to serve as a subcontractor to

NHS and the Systems Integrator for the HIX project.  As the Systems Integrator, EngagePoint

was responsible for the design, development, and implementation of the HIX.

9.       As part of the Subcontract Agreement, EngagePoint acknowledged the

significance of the services to be provided by EngagePoint and the necessity of continuity, even

in the event of termination.  Specifically:

(a)       Section 5.F.8 of the Subcontract Agreement provided that, upon

termination of the Subcontract Agreement, EngagePoint would, "in accordance with

[NHS]'s written direction, immediately . . . [t]ake any action that may be necessary, or

that [NHS] may direct, for the orderly transition or close-out of the terminated work

. . . ."  *See* Ex. 1, § 5.F.8.

(b)       Section 5.H of the Subcontract Agreement, under the heading "Continuity

of Services," states that:

Subcontractor acknowledges that the services provided by Contractor under the
Prime Contract, including the Services provided by Subcontractor under this
Agreement, are vital to the State and must be continued without interruption in the
event of expiration or termination of this Agreement.   Upon expiration or
termination, and as requested by Contractor, Subcontractor shall take all
reasonable steps to facilitate continuity of services.

*See* Ex. 1, § 5.H.

(c)      Section 7.D of the Subcontract Agreement, under the heading "Duty to

Continue Performance," provides that, "Notwithstanding anything to the contrary

contained herein, Subcontractor shall proceed diligently with performance of this

Agreement pending the resolution of any dispute." *See* Ex. 1, § 7.D.

(d)      Section 8.F of the Subcontract Agreement, under the heading "Remedies,"

provides that, "[u]pon any actual or threatened violation of this Agreement by the other

party, the disclosing party may be entitled to preliminary and other injunctive relief

against such violation." *See* Ex. 1, § 8.F

10.      Due to EngagePoint's repeated failures to perform satisfactorily and cure its prior

breaches of the Subcontract Agreement, and its refusal to cooperate with NHS in completing the

HIX project, NHS terminated the Subcontract Agreement for cause on October 25, 2013.

11.      Since terminating the Subcontract Agreement for cause, NHS has requested on

numerous occasions that EngagePoint provide it with project documentation, data, and

information that is necessary to NHS's ability to provide services, without interruption, to the

State.

12.      The project documentation, data, and information that NHS has requested from

EngagePoint constitute Work Product under the Subcontract Agreement.

13.      As part of the Subcontract Agreement, EngagePoint agreed that "all Work

Product . . . shall be the State's sole and exclusive property." *See* Ex. 1, § 10.B.

14.      EngagePoint has not provided NHS with all of the project documentation, data,

and information that NHS has requested and that is necessary to NHS's ability to provide

services, without interruption, to the State.

15.     On October 25, 2013, EngagePoint obtained a Temporary Restraining Order in the Maryland Circuit Court for Anne Arundel County enjoining NHS from soliciting, seeking to hire, or hiring any EngagePoint employees until 9:00 a.m. on October 29, 2013  (the "Maryland TRO").

16.     On October 29, 2013, this Court denied EngagePoint's motion to extend the Maryland TRO or, in the alternative, to grant a preliminary injunction enjoining NHS from soliciting, seeking to hire, or hiring any EngagePoint employees, holding that "EngagePoint is unlikely to succeed on the merits."

17.     The October 29 Order also recognized "the time constraints and public importance of having a fully functional health insurance exchange in Maryland."  *See* ECF No. 20, at 3.

18.     Absent intervention of this Court, EngagePoint will continue to evade its ongoing obligation to provide to NHS all of the project documentation, data, and information that NHS has requested.

19.     NHS would be irreparably harmed if EngagePoint does not provide to NHS all of the project documentation, data and information that NHS has requested, and may continue to request, and that is necessary to NHS's ability to provide services, without interruption, to the State.  That harm would include loss of reputation and goodwill.

20.     There is a justiciable controversy between the parties.  Specifically, the controversy involves whether EngagePoint is required to provide to NHS all of the project documentation, data, and information that NHS has requested, and may continue to request, and that is necessary to NHS's ability to provide services, without interruption, to the State.

21.     NHS has no adequate remedy at law.

**Claim for Relief**

22.     EngagePoint is contractually obligated to take all reasonable steps to facilitate continuity of services to the State of Maryland under the Prime Contract.

23.     EngagePoint has not taken all reasonable steps to facilitate continuity of services to the State of Maryland under the Prime Contract.

24.     NHS is entitled to preliminary and other injunctive relief for EngagePoint's failure to comply with its ongoing obligations under the Subcontract Agreement.

**Prayers for Relief**

WHEREFORE, NHS prays that the Court:

1.     issue any and all necessary temporary, interim, and preliminary orders and injunctions to ensure EngagePoint's compliance with its ongoing obligations and to prevent irreparable injury pending a final determination of this case;

2.     issue a permanent injunction compelling EngagePoint to comply with its ongoing obligations to maintain continuity of services under the Prime Contract;

3.     grant such other, further, and additional and additional relief as the Court determines is fair, just, and proper.

Dated: October 30, 2013                    By: _____/s/_____

                                           Ari S. Meltzer (#18397)
                                            ameltzer@wileyrein.com
                                           Daniel P. Graham (admitted pro hac vice)
                                            dgraham@wileyrein.com
                                           Todd Bromberg (admitted pro hac vice)
                                            tbromberg@wileyrein.com
                                           Wiley Rein LLP
                                           1776 K Street, NW
                                           Washington, D.C. 20006
                                           202-719-7000 (phone)
                                           202-719-7049 (fax)

                                           *Counsel for Defendant Noridian*
                                           *Healthcare Solutions, LLC*

**<u>CERTIFICATE OF SERVICE</u>**

      I certify that on October 30, 2013, I filed the foregoing document in accordance with the

electronic-filing procedures adopted by this Court, which shall cause a copy to be served upon

counsel for Plaintiff EngagePoint, Inc.

Dated: October 30, 2013          By: _____/s/_____

                         Ari S. Meltzer (#18397)
                          ameltzer@wileyrein.com
                         Wiley Rein LLP
                         1776 K Street, NW
                         Washington, D.C. 20006
                         202-719-7000 (phone)
                         202-719-7049 (fax)

                         *Counsel for Defendant Noridian*
                         *Healthcare Solutions, LLC*